# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GINO BIONDI, an individual, and <br> LISA BIONDI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> ALABAMA SHORELINE, LLC, <br> an Alabama Limited Liability Company, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CV 2:09-cv-00377-LSC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 56(f)

Plaintiffs Gino and Lisa Biondi (the "Biondis") hereby submit their brief in opposition to Defendant's motion for partial summary judgment and in support of the Plaintiffs' Motion to Deny or Continue Consideration of Defendant's Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56(f), which is filed contemporaneously herewith.

## I. INTRODUCTION

Defendant Alabama Shoreline, LLC's ("Shoreline") motion for partial summary judgment seeks summary judgment on Counts II through V of the Biondis' complaint. Those counts set forth claims for violation of the Interstate Land Sales Full Disclosure Act, fraud, suppression, and rescission of the

underlying real estate sales contracts. *See* Complaint, Ct. Doc. 3, pp. 8-24. Shoreline's brief in support of its motion for partial summary judgment argues that such claims were released by an agreement captioned "Settlement Agreement and Release" (the "Settlement Agreement"), which was entered into by the Biondis and Shoreline effective August 6, 2008. *See* Defendant's Brief in Support of Motion for Partial Summary Judgment ("Defendant's Brief"), Ct. Doc. 13-2, p. 2; *see also* Settlement Agreement and Release, Ct. Doc. 3, Exhibit A.

As noted by Shoreline in its brief and pled by the Biondis in their Complaint, the release contemplated by the Settlement Agreement is contingent upon the satisfaction of certain "material, express conditions precedent." Defendant's Brief, p. 2; *see also* Complaint, p. 2, ¶ 3 and p. 18, ¶ 79. In particular, the Settlement Agreement provides that the release is not effective "until such time as Alabama Shoreline receives the Dredging Permit, and the receipt of the Dredging Permit by Alabama Shoreline is an express condition precedent to the effectuation of the Release." Defendant's Brief, p. 3, ¶ 4; *see also* Settlement Agreement, p. 4, ¶ 3(b). As permitted by FED. R. CIV. P. 8(d)(2), the Biondis included alternatively pled Counts II through V in their Complaint in order to preserve such claims in the event that discovery in this case reveals that the condition precedent was not performed, *see* Complaint, ¶¶ 3, 78-80, or reveals any other basis upon which the release may not be enforceable.

2

Shoreline's motion for partial summary judgment assumes and represents that the condition precedent has been performed, i.e. that the Dredging Permit contemplated by the Settlement Agreement was obtained by Shoreline in the fall of 2008. *See* Defendant's Brief, pp. 3-4, ¶¶ 5,7-9. Whether, however, Shoreline has received the Dredging Permit contemplated by the Settlement Agreement is a question of fact that may be subject to dispute, and the Affidavit of Clint Brady submitted by Shoreline in support of its motion *does not* answer that question. *See* Ct. Doc. 13-3. As set forth in the response to Shoreline's statement of allegedly undisputed facts below, the affidavit states that a dredging permit was received by Shoreline, but it does not state that the permit is *the* Dredging Permit contemplated by the Settlement Agreement. Lacking such proof, Shoreline is not entitled to judgment as a matter of law in its favor. Moreover, even if Mr. Brady had ventured a lay opinion in his affidavit that the permit (or permits) obtained by Alabama Shoreline match the express descriptions and requirements for the Dredging Permit set forth in the Settlement Agreement, the Biondis have had no opportunity to test such contention through discovery because, to date, no

B HTI 827458 v1
2907860-000001 6/1/2009

discovery has been completed by any party.[1]

Shoreline filed its pending motion for partial summary judgment approximately ten days before the parties' mutually agreed deadline for the initial disclosures required by FED. R. CIV. P. 26(a). *See* Ct. Doc. 11. The parties have exchanged a first round of written discovery, but the responses to such discovery are not yet due. *See* Affidavit of Harriet Thomas Ivy in Support of Motion Pursuant to FED. R. CIV. P. 56(f) ("Ivy Aff.") (attached as **Exhibit A** to Plaintiffs' Rule 56(f) motion filed contemporaneously herewith), ¶ 7. The Biondis have issued subpoenas pursuant to FED. R. CIV. P. 45 for the documents and testimony of third parties who should have knowledge regarding the scope, requirements, and conditions of the permits for dredging that Shoreline has (apparently) received. *See* Ivy Aff. ¶ 8. No depositions have been taken by any party, however. In short, the Biondis have had no opportunity to conduct *any* discovery on the merits of their claims. *See* Ivy Aff., ¶¶ 6-8, 37, 41.

---

[1] As discussed herein, one of the maps included in the permitting documentation submitted in support of Shoreline's motion appears to be identical to the map of the Dredge contemplated by the Settlement Agreement. However, as noted by the Affidavit of Harriet Thomas Ivy in Support of Motion Pursuant to FED. R. CIV. P. 56(f), the documentation is not straightforward, and the Biondis should have the opportunity to take discovery of the necessary representatives of the U.S. Army Corps of Engineers (the "Corps") and the Tennessee Valley Authority (the "TVA") in order to understand what the permit or permits that Shoreline alleges it has received provide and whether they are as contemplated by the Settlement Agreement.

4

As set forth herein and in the supporting affidavit attached to the Biondis' contemporaneously filed Rule 56(f) motion, the Biondis are unable to present certain facts essential to justify their opposition to summary judgment. In addition to facts necessary to discover whether the permit obtained by Alabama Shoreline is sufficient to satisfy the condition precedent of the release given by the Biondis, the Biondis are entitled to discover whether – even if the condition precedent has been performed – there is any ground upon which the Biondis could plead promissory fraud and seek rescission of the Settlement Agreement.

The Biondis have been very careful to safeguard the claims set forth in Counts II through V of their Complaint against any defense pursuant to an applicable statute of limitations. Specifically, the Biondis and Shoreline entered into a series of tolling agreements, pursuant to which the parties agreed that the passage of time from April 10, 2008 until March 1, 2009 would not be counted with respect to the application of the statute of limitations. *See* Ivy Aff. ¶ 38; *see also* Complaint, pp. 18-19, ¶¶ 81-82 and Exhibit B thereto. The Biondis filed their complaint on or about February 25, 2009 and pled (in the alternative) the four counts that Shoreline claims were released in order to preserve those claims in the event any discovery revealed a basis upon which the release set forth in the Settlement Agreement is unenforceable.

5

To dismiss the claims upon Shoreline's motion prior to any opportunity for discovery by the Biondis to determine if they are viable would obviate the careful steps the Biondis have taken to preserve the claims against attack on statute of limitations grounds. Specifically, if the claims are dismissed prematurely, and discovery later reveals either that the condition precedent for the release was not performed, or that Shoreline entered into the Settlement Agreement with fraudulent intent, thus entitling the Biondis to rescission, the Biondis may face a successful statute of limitations defense against their renewed claims. Such a result would not be just.

Shoreline's motion for partial summary judgment was filed with lightening speed.[2] The Biondis agree that streamlining this litigation is a praiseworthy goal, but, because no discovery has been completed, it is too early to justly accomplish such goal. Summary judgment should be denied because the Biondis have not had any opportunity to develop facts through discovery that may show whether the release is effective. At the very least, Shoreline's motion should be continued until such time as the required discovery described by the Affidavit of Harriet Thomas Ivy in Support of Motion Pursuant to FED. R. CIV. P. 56(f) may be completed.

---

[2] If only such speed had been applied to the commencement and completion of the dredging contemplated by the Settlement Agreement, this litigation might not have been necessary.

B HTI 827458 v1
2907860-000001 6/1/2009

## II. PLAINTIFFS' STATEMENT OF FACTS

### A. Response to Shoreline's Statement

3. The Biondis object to this statement of fact to the extent that it implies that all "potential claims" against Shoreline are covered by the release and that the release is effective. First, the Settlement Agreement provides that the release "shall not be construed to release any claim that may arise subsequent to [its] execution" or that "may arise under" the Settlement Agreement. *See* Settlement Agreement (attached as Exhibit A to Ct. Doc. 3), p. 4, ¶ 3(c). "Without limitation," the Biondis reserved claims arising from a failure of Shoreline to "commence or cause to be commenced the construction of the Dredge" within sixty days of the date upon which Shoreline obtains the Dredging Permit or arising from Shoreline's failure to complete the construction of the Dredge or to maintain the Dredge. *See id.* Second, whether the release is effective depends upon the performance of an express condition precedent. *See* Defendant's Brief, p. 3, ¶ 4; *see also* Settlement Agreement, p. 4, ¶ 3(b).

5. The Biondis object to this statement because it is incomplete. The definition of "Dredging Permit" in the Settlement Agreement is more precise than "the permit necessary to dredge two channels in the cove adjacent to the Lots." Defendant's Brief, p. 3, ¶ 5. Specifically, the Settlement Agreement defines the "Dredging Permit" as the "required permit necessary to complete the Dredge." *See*

7

Settlement Agreement, p. 3, ¶ 2(c). In turn, the "Dredge" is defined in the Settlement Agreement as:

> [A] channel (the "Main Channel") from the cove in which the Development is located (the "Cove") to Lake Guntersville to a width of thirty-six (36) feet and a depth of four (4) to five (5) feet. The length of the Main Channel will be approximately two thousand seven hundred (2,700) feet, ending at a point in Lake Guntersville that has a normal pool depth of at least four (4) to (5) feet. The Main Channel shall be located at a distance from the shoreline in the Cove such that the Biondis' permitted docks and dredges intersect with it. In addition to the Main Channel, Alabama Shoreline will at its expense dredge an extension or side channel (the "Side Channel") into the cove adjacent to Lots 7 and 8, having the same depth and width as the Main Channel and intersecting with the Biondis' permitted docks and dredges for those lots. The Main Channel and the Side Channel will be referred to herein collectively as the "Dredge." Attached hereto as **Exhibit A** is a map or plan of the Dredge . . . .

Settlement Agreement, pp. 2-3, ¶2(a).

7. The Biondis object that the Affidavit of Clint Brady does not state that Shoreline applied for the Dredging Permit as that term is defined in the Settlement Agreement. Mr. Brady's affidavit actually states that Shoreline "applied for the dredging permit necessary to dredge two channels in the cove adjacent to the Strand . . . ." *See* Ct. Doc. 13-3, pp. 1-2, ¶ 3. The Biondis require discovery to determine if the dredging permit or permits applied for match the description of the Dredging Permit set forth in the Settlement Agreement. *See* Ivy Aff. ¶¶ 9-25.

8. The Biondis object that the Affidavit of Clint Brady does not state that the Corps issued and that Shoreline received the Dredging Permit as that term is

8

B HTI 827458 v1
2907860-000001 6/1/2009

defined in the Settlement Agreement. Mr. Brady's affidavit actually states that the Corps issued a permit for the Dredge as that term is defined in his affidavit: "the dredging permit necessary to dredge two channels in the cove adjacent to the Strand." *See* Ct. Doc. 13-3, pp. 1-2, ¶¶ 3-4. The Biondis require discovery to determine if the dredging permit or permits issued by the Corps match the description of the Dredging Permit set forth in the Settlement Agreement. *See* Ivy Aff. ¶¶ 9-25.

9. The Biondis object that the Affidavit of Clint Brady does not state that the TVA issued and that Shoreline received the Dredging Permit as that term is defined in the Settlement Agreement. Mr. Brady's affidavit actually states that the TVA issued a permit for the Dredge as that term is defined in his affidavit: "the dredging permit necessary to dredge two channels in the cove adjacent to the Strand." *See* Ct. Doc. 13-3, pp. 1-2, ¶¶ 3, 5. The Biondis require discovery to determine if the dredging permit or permits issued by the TVA match the description of the Dredging Permit set forth in the Settlement Agreement. *See* Ivy Aff. ¶¶ 9-25.

10. The Biondis object to this statement because the release is effective only upon the performance of an express condition precedent, *see* Defendant's Brief, p. 3, ¶ 4; *see also* Settlement Agreement, p. 4, ¶ 3(b), and the Biondis require discovery to determine if the dredging permit or permits issued match the

9

B HTI 827458 v1
2907860-000001 6/1/2009

description of the Dredging Permit set forth in the Settlement Agreement. *See* Ivy Aff. ¶¶ 9-25. The Biondis also require discovery to determine if there is any basis upon which, even if the condition precedent has been performed, the Settlement Agreement is due to be rescinded. *See* Ivy Aff., ¶¶ 27-36.

12. The Biondis object to this statement to the extent it states that Counts II through V of the Complaint have been released. The release is effective only upon the performance of an express condition precedent, *see* Defendant's Brief, p. 3, ¶ 4; *see also* Settlement Agreement, p. 4, ¶ 3(b), and the Biondis require discovery to determine if the dredging permit or permits issued match the description of the Dredging Permit set forth in the Settlement Agreement. *See* Ivy Aff. ¶¶ 9-25. The Biondis also require discovery to determine if there is any basis upon which, even if the condition precedent has been performed, the Settlement Agreement is due to be rescinded. *See* Ivy Aff., ¶¶ 27-36.

### III. ARGUMENT

**A. The Biondis are entitled to discovery of facts necessary to determine whether the express condition precedent for the release set forth in the Settlement Agreement has been performed and whether the Settlement Agreement itself is enforceable.**

Pursuant to Rule 56, FED. R. CIV. P., a party is entitled to summary judgment only where no questions of material fact exist and the moving party is entitled to judgment as a matter of law. "[S]ummary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is

10

B HTI 827458 v1
2907860-000001 6/1/2009

essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Estate of Cabello v. Fernandez-Larios*, 157 F. Supp. 2d 1345 (S.D. Fla. 2001) (fact that insufficient time had been afforded to plaintiffs for discovery precluded summary judgment). The Biondis have not been afforded *any* opportunity for discovery. As set forth in the Affidavit of Harriet Thomas Ivy in Support of Motion Pursuant to FED. R. CIV. P. 56(f), there are material facts that the Biondis may learn as discovery proceeds in this case that are reasonably expected to create a genuine issue of material fact as to the enforceability of the Settlement Agreement or the release therein. In fact, while the time for discovery in this case has just commenced, the Biondis have already served interrogatories and requests for production upon Shoreline and have issued subpoenas for documents and testimony to the Corps and the TVA that will elicit facts believed to be essential to support their opposition to Shoreline's pending motion for partial summary judgment. *See* Ivy Aff. ¶¶ 7-8, 24-25, 35-36. If the Biondis' discovery to the Corps and the TVA does yield facts determinative of the issue, expert testimony may be required. *See* Ivy Aff. ¶ 25.

Shoreline's argument in support of its motion for partial summary judgment rests upon its assertion that the permit or permits that it has obtained from the Corps and the TVA are those contemplated by the Settlement Agreement. The supporting affidavit submitted by Shoreline *does not* attest to such fact, however.

11

*See* Part II, A, *supra*, ¶¶ 7-9. On that basis alone, Shoreline is not entitled to judgment in its favor as a matter of law.

To the extent that Shoreline asserts that the permitting documentation submitted in support of its motion, *see* Ct. Doc. 13-3 Attachment 1-Attachment 3, is sufficient to prove that it obtained the Dredging Permit as that term is defined in the Settlement Agreement, the Biondis are entitled to discovery of facts essential to determine whether the permit or permits attached are those contemplated by the Settlement Agreement. *See* Ivy Aff. ¶¶ 11-22. In addition to other discovery, the Biondis seek to take the deposition of representatives of the Corps and the TVA who may provide competent evidence regarding the dredge that is permitted and explain any conditions or requirements of the permit or permits. *See* Ivy Aff. ¶¶ 8, 24.

Such discovery is reasonable because the permitting documentation attached to Mr. Brady's affidavit is not easily understood. There is an apparent material discrepancy in the description of the dredge set forth in the Corps documentation, *see* Ivy Aff. ¶ 13, and multiple different maps of proposed or permitted dredges are attached, *see* Ivy Aff. ¶¶ 17, 19. In addition, there are numerous pages of conditions and restrictions, the effect of which requires some explication. *See* Ivy Aff. ¶¶ 16, 18, 20. Finally, it is suspicious that Shoreline not provide a copy of the permit it received to the Biondis until March 2009, *after* this litigation was filed.

12

*See* Ivy Aff. ¶¶ 31-32, *see also* Settlement Agreement, p. 3, ¶ 2(c) (requiring disclosure upon receipt). Shoreline's failure to disclose the permit until many months after it was apparently received raises the question whether Shoreline considered the permit to be consistent with the Dredging Permit contemplated by the Settlement Agreement. *See* Ivy Aff. ¶ 33.

Shoreline's motion for partial summary judgment tacitly claims that the there is no genuine issue of fact as to the Settlement Agreement's enforceability. Even if the condition precedent for the Biondis' release of Shoreline was undisputed, however, there may be grounds to support claims for rescission of the Settlement Agreement. Questions of material fact exist as to the facts and circumstances surrounding the entrance of the parties into the Settlement Agreement. Presumably, if Shoreline had a true intent to perform its obligation to commence construction of the Dredge within sixty days of the issuance of the required permit, as it is required to do under Paragraph 2(c) of the Settlement Agreement, it would have taken steps to locate and retain a suitable contractor prior to or immediately following the issuance of a permit. Yet Shoreline's initial disclosures do not identify *any* dredging contractors. *See* Ivy Aff. ¶ 28. Counsel for Shoreline has produced one bid proposal for a dredge that was evidently accepted by Shoreline, however. *See* Ivy Aff. ¶ 28. The proposal is dated

February 12, 2009, and Shoreline's acceptance was given February 13, 2009. *See* Ivy Aff. ¶ 28.

If, as Shoreline claims in its motion for partial summary judgment, the dredging permit required by the Settlement Agreement was obtained no later than October 8, 2008, *see* Defendant's Brief, p. 4, ¶ 10, it appears that more than sixty days elapsed between the date that Shoreline received a permit and the date that it accepted a bid from a dredging contractor. As set forth in the supporting affidavit, such passage of time raises reasonable questions regarding Shoreline's intent in entering into the Settlement Agreement. *See* Ivy Aff. ¶ 30.

Why, having a narrow window to perform, did Shoreline take so long to retain a contractor? If, as Shoreline claims in its motion for summary judgment, the permit application was submitted in May 2008, *see* Defendant's Brief, p. 4, ¶ 7, when did it reasonably expect the permit would issue, and what steps or actions was it taking to perform in anticipation of its issuance? If Shoreline attempted prior to February 2009 to retain a contractor, when and what were those efforts and why were they unsuccessful? When did Shoreline know that it would be unable to commence construction of the dredge? Did it know before it executed the Settlement Agreement that it could not perform during the sixty day period specified in therein? *See* Ivy Aff. ¶ 30.

14

Anticipating the July 1, 2009 deadline to amend the Complaint under the Scheduling Order, *see* Ct. Doc. 12, the Biondis have already propounded discovery that is expected to reveal whether there are grounds to plead that Shoreline had the intention not to perform the Settlement Agreement when it was executed. *See* Ivy Aff. ¶¶ 7, 35-36.[3] If the pending discovery reveals facts tending to show that Shoreline had no intention to commence construction of the Dredge within sixty days of issuance of the required permit when it entered into the Settlement Agreement, such facts would support the addition to the Complaint of a count or counts for rescission of the Settlement Agreement. Rescission is a remedy available to a plaintiff who has entered into a contract in reliance upon the defendant's fraudulent promise to perform. *See Snell v. Nat'l Bank of Winter Haven*, 122 So. 362, 363-64 (Ala. 1929) (if a contract is made with no intention at the time to perform it, that constitutes fraud justifying a rescission); *see also Nelson Realty Co. v. Darling Shop of Birmingham, Inc.*, 101 So. 2d 78, 83 (Ala. 1957) (a misrepresentation that serves as the inducement to a contract is a fraud entitling the promise to a rescission or cancellation). In sum, the facts sought by

---

[3] Suspicions regarding Shoreline's intent also naturally follow from the parties' course of dealing, which is described in the Biondis' Complaint. "Evidence of consistent, but unfulfilled promises can in some cases amount to substantial evidence of an intent to deceive." *Southland Bank v. A & A Drywall Supply Co., Inc.*, 2008 WL 5195187, *13 (Ala. Dec. 12, 2008).

15

B HTI 827458 v1
2907860-000001 6/1/2009

the Biondis' pending discovery to Shoreline may create a genuine issue of material fact as to the enforceability of the Settlement Agreement. *See* Ivy Aff. ¶ 40.

Finally, the Biondis have been very careful to safeguard the claims set forth in Counts II through V of their complaint against any defense pursuant to an applicable statute of limitations. Specifically, the Biondis and Shoreline entered into a series of tolling agreements, pursuant to which the parties agreed that the passage of time from April 10, 2008 until March 1, 2009 would not be counted with respect to the application of the statute of limitations. *See* Ivy Aff. ¶ 38; *see also* Complaint, pp. 18-19, ¶¶ 81-82 and Exhibit B thereto. Any dismissal of the alternatively pled counts before discovery has been conducted as to whether the condition precedent for the release has been met and as to whether there are any grounds to rescind the Settlement Agreement would be premature and will prejudice the Biondis.

Specifically, depending upon the facts that may be learned from discovery already propounded, the Biondis may have grounds to amend the Complaint to include counts for rescission of the Settlement Agreement. Rescission would certainly make the alternatively pled counts viable, as would evidence that Shoreline never received the Dredging Permit as that term is defined in the Settlement Agreement. However, if Counts II through V are prematurely dismissed and the Biondis are forced to re-file such claims once essential discovery

16

has been completed, arguments regarding whether the counts are time-barred would certainly surface to complicate the litigation. If the renewed counts were subsequently found to be time-barred, the Biondis' efforts to preserve their claims will have been for naught, and justice will not be served. Rather, justice is best served and the resources of the parties and the Court are best preserved through denial of Shoreline's motion for partial summary judgment or a continuance of this Court's consideration of said motion.

## IV. CONCLUSION

As demonstrated herein and in the Affidavit of Harriet Thomas Ivy in Support of Motion Pursuant to FED. R. CIV. P. 56(f), Shoreline's motion for summary judgment is due to be denied or, at the very least, continued pursuant to FED. R. CIV. P. 56(f). The Biondis have not had any opportunity to develop facts through discovery that may show whether the release that Shoreline seeks to enforce is effective or whether there are any grounds to seek rescission of the Settlement Agreement. Accordingly, the Biondis cannot present all facts essential to justify their opposition to Defendant's motion.

Respectfully submitted by,

/s/Harriet Thomas Ivy
PATRICIA CLOTFELTER
HARRIET THOMAS IVY
PAIGE CASEY
Attorneys for Plaintiffs

17

B HTI 827458 v1
2907860-000001 6/1/2009

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
420 North 20th Street
Suite 1600
Birmingham, Alabama 35203
Phone: (205) 328-0480
Fax: (205) 244-8315

## CERTIFICATE OF SERVICE

I certify that on June 1, 2009, a copy of the foregoing was served on the following via e-mail and first-class U.S. Mail:

Edward S. Sledge, IV
Bryan A. Coleman
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618

/s/ Harriet Thomas Ivy
OF COUNSEL